**KENTUCKY BAR ASSOCIATION,**
**Complainant,**

v.

**Caroline L. GRIFFITH, Respondent.**

**No. 2004–SC–0223–KB.**

Supreme Court of Kentucky.

June 17, 2004.

As Amended June 21, 2004.

**OPINION AND ORDER**

This matter, against Respondent, Caroline Laurie Griffith, of Louisville, Kentucky, involves six default disciplinary cases, KBA files 8206, 8301, 8668, 9069, 9467, and 9782. At the time of their joint consideration by the Board of Governors (Board) on November 14, 2003, Respondent was suspended from the practice of law in Kentucky for noncompliance with Continuing Legal Education (CLE) requirements and non-payment of bar dues. The Board recommends her suspension from the practice of law for five years, and she has not requested review of that recommendation pursuant to SCR 3.370(8).

## I. KBA FILE NO. 8206.

On February 7, 2000, Pamela Leonard spoke to Respondent about representing her in a workers' compensation claim and wrongful termination case.

On February 14, 2000, Leonard signed an attorney-client agreement with Respondent regarding the workers' compensation matter. On April 14, 2000, Leonard signed workers' compensation forms prepared by Respondent, who filed an Application for Resolution of Injury Claim on June 19, 2000. In response, the Department of Workers' Claims sent letters to Leonard and Respondent verifying receipt of the Application and setting the benefit review conference for October 10, 2000. Before receiving the letter, Leonard had not received any information on her claim since her April meeting with Respondent.

On April 24, 2000, Respondent agreed to draft a complaint for Leonard in the wrongful termination matter. After the meeting, Respondent sent Leonard a letter confirming the representation, setting her fee at $110.00 per hour, and requesting Leonard to remit a $220.00 retainer fee prior to the filing of the Complaint. Exactly one month later, they met to discuss the wrongful termination matter again. Respondent sent Leonard another letter confirming the conversation, informing Leonard that she received the requested retainer fee, that the complaint would be filed that week, and that Leonard would receive a stamped copy of it by mail. However, Respondent never filed the complaint.

Thereafter, Leonard repeatedly called Respondent and left messages for her, but never received a response. As a result, Leonard terminated the representation in a letter in which she outlined her dissatisfaction with the representation and requested a copy of her file. Her attempt to hand-deliver the letter on September 5, 2000, was unsuccessful because Respondent was unavailable, so she sent the letter the same day by certified mail.

On August 27, 2003, the Inquiry Commission issued a three-count charge against Respondent. SCR 3.190. Count I charges her with failing to act with reasonable diligence and promptness, SCR 3.130–1.3, due to her delayed filing of the workers' compensation claim, and her failure to file the wrongful termination complaint after accepting a retainer fee to do so. Count II, based upon Respondent's failure to return Leonard's telephone calls and to communicate with her about her cases, alleges that Respondent violated SCR 3.130–1.4(a). Count III alleges that Respondent violated SCR 3.130–1.16(d), governing an attorney's duties upon the termination of representation, by abandoning Leonard, failing to return the unearned fee charged for the wrongful termination claim, and failing to return Leonard's file as requested.

## II. KBA FILE NO. 8301.

In or about November 1999, Terry Gudger retained Respondent to represent him in a workers' compensation case. She did not file the claim until May 25, 2000. Gudger made several attempts to contact Respondent to check on the status of his case and requested that she provide him with copies of documents, including the results of his independent medical examination. She never responded to any of his inquiries. On September 18, 2000, the opposing party deposed five witnesses, whose testimony was later introduced as evidence. Respondent neither attended the depositions nor called any witnesses on Gudger's behalf at his hearing. The Administrative Law Judge ultimately determined that Gudger's injury was not work-related.

The Inquiry Commission issued a two-count charge against Respondent, SCR 3.190, on May 6, 2003. Count I charged Respondent with failure to provide reasonably diligent and prompt representation, SCR 3.130–1.3, due to her delayed filing of Gudger's claim and her failure to attend the depositions. Count II alleges that Respondent failed to keep her client reasonably informed and to comply with reasonable requests for information, SCR 3.130–1.4(a), by neglecting to provide Gudger with the documents he requested and generally refusing to communicate with him about his case.

### III. KBA FILE NO. 8668.

On December 7, 1999, Brigitte Grisanti retained Respondent to represent her in a dispute with her landlord over significant problems with her newly rented apartment. Specifically, Grisanti told Respondent that she wanted her landlord to fix the heating, that she wanted to be released from her lease as soon as possible, and that she wanted any money damages that she could obtain. Respondent called Grisanti's property manager, who agreed to fix the heating, but declined to release Grisanti from her lease. The following week, Grisanti returned to Respondent's office to sign documents to file the lawsuit. Respondent informed her that she could expect a trial date in February 2000 or later. However, Respondent did not file the complaint until February 10, 2000. Around that time, Grisanti called Respondent to inquire about her case because she had not communicated with her in a long time. Respondent informed her that she was going to file a motion for default judgment because the opposing party had failed to answer the complaint.

Subsequently, Grisanti attempted to contact Respondent by telephone. Unable to reach her, Grisanti began writing letters to her. Respondent sent her three letters in reply, one in April, one in May, and one in June 2000. In the June letter, dated June 29, 2000, Respondent stated that she would notify Grisanti when a date for her hearing was set. Sometime around June 30, 2000, Respondent filed a motion for a hearing date, after which she took no further action on Grisanti's behalf. The case was set for trial on September 12, 2000, but Respondent never informed Grisanti of that development.

Despite additional efforts to contact Respondent after receiving the June letter, Grisanti had no further communication with her. In the course of those efforts, Grisanti discovered that Respondent had moved her office and changed her address and telephone number. On July 14, 2000, Grisanti mailed Respondent a certified letter, which was returned to her near the beginning of August 2000, due to Respondent's failure to claim it. As a result, Grisanti hand-delivered the letter to Respondent's office on August 8, 2000, but never received a response.

Respondent failed to appear for trial, and at the request of opposing counsel, the trial court granted a continuance due to an emergency. Grisanti retained another attorney around August 2001, and her case was settled in May 2002.

The Inquiry Commission issued a two-count charge against Respondent. SCR 3.190. Count I alleged that Respondent failed to represent Grisanti with "reasonable diligence and promptness" as required by SCR 3.130–1.3. Count II charged Respondent with violating SCR 3.130–1.4(a) because she did not keep Grisanti reasonably informed about the status of her case or comply with reasonable requests for information.

### IV. KBA FILE NO. 9069.

Around summer 2000, Christopher and Danielle Waldridge retained Respondent

to assist them in opening and funding a new business. To obtain funding, the Waldridges took out a loan from Citizens Union Bank in Shelbyville, secured by a second mortgage on their farm and a lien on some of their personal property. Respondent drafted the necessary documents for that transaction and attended the closing on September 5, 2000. However, she failed to record the documents in the County Clerk's office. Both the Waldridges and Larry Dean, vice-president of the bank, called Respondent numerous times and requested that she record the documents. Dean also requested copies of the recorded documents. While respondent sent Dean the requested documents, she never recorded them. In or around January 2002, Dean hired another attorney to prepare the documents, obtain the necessary signatures, and record them with the clerk. He filed a complaint against Respondent with the KBA.

The inquiry Commission issued a two-count charge against Respondent. SCR 3.190. Count I alleged that Respondent provided inadequate and incompetent representation, SCR 3.130–1.1, by failing to record the mortgage and lien documents as necessary to preserve the security interest of the lender and the rights of the clients. Count II charged Respondent with violating SCR 3.130–1.3, requiring diligence and promptness in representation, because she did not timely fulfill her duties.

### V. KBA FILE NO. 9467.

In November 1999, Calvin Trice sustained an on-the-job injury due to the negligence of a third party. In or around December 1999, he retained Respondent to represent him in two actions—a personal injury action against the tortfeasor and a workers' compensation claim. Trice made many unsuccessful attempts to contact Respondent. She never returned his telephone calls or otherwise communicated with him, and changed her office location, address, and telephone number without notifying him. The statute of limitations for Trice's claims expired. He terminated the representation, hired another attorney, and requested a copy of his file from Respondent, to no avail.

In April 2002, Trice sued her for malpractice in the Jefferson Circuit Court. She admitted that she had agreed to represent him in the workers' compensation claim and that through her inaction, had allowed the statute of limitations to expire. However, she failed to respond to discovery requests and did not comply with the trial court's order requiring her to respond. The trial court found her liable for malpractice, specifically finding that she and Trice had an attorney-client relationship, that she agreed to pursue both of his claims, but had allowed their statutes of limitations to expire, and that her negligence caused direct financial loss to Trice. A judgment was entered against her in the amount of $56,550.00.

On August 8, 2003, the Inquiry Commission issued a four-count charge against Respondent. SCR 3.190. Count I charged her with providing inadequate representation, SCR 3.130–1.1, by failing to file Trice's claims before the expiration of the applicable statutes of limitations. Count II alleged that Respondent neglected to act with "reasonable diligence and promptness," SCR 3.130–1.3, because she did not take appropriate and timely steps to proceed with Trice's claims. Count III alleged that Respondent failed to keep her client reasonably informed, SCR 3.130–1.4(a), by ignoring Trice's telephone calls, and refusing to provide him with information regarding the status of his case. Count IV charged Respondent with violat-

ing SCR 3.130–1.16(d), because she never returned Trice's documents.

## VI. KBA FILE NO. 9782.

In fall 2001, Jenny Wrightington retained Respondent to represent her father's estate. She appeared at the initial probate hearing. Wrightington requested that Respondent assist in the collection of her father's unpaid disability benefits, and gave her all documents relevant to that matter. Attempting to keep informed on the status of the case, Wrightington made numerous attempts to contact Respondent by telephone and mail, but received no response. Because of her inability to contact Respondent, Wrightington decided to hire another attorney, but was unable to do so because Respondent failed to return the documents relating to the unpaid benefits. Wrightington's husband filed a complaint against Respondent with the KBA. Respondent never responded.

On August 19, 2003, the Inquiry Commission issued a three-count charge against Respondent. SCR 3.190. Count I charged her with violating SCR 3.130–1.4(a) by failing to return Wrightington's telephone calls, answer her letters, or keep her reasonably informed of the status of the case. Count II alleged that Respondent violated SCR 3.130–1.16(d), governing termination of representation, by refusing to return Wrightington's documents after abandoning her. Count III alleged that Respondent violated SCR 3.130–8.1 by failing to respond to the KBA complaint requesting information regarding the representation.

Respondent filed no answer to any of the six charges issued against her. Thus, all of them were submitted to the Board as default cases. SCR 3.210(1). The Board unanimously found her guilty of all counts. As neither party requested review, we adopt the majority recommendation of the Board as follows. SCR 3.370(10). Accordingly, it is hereby ordered:

1. Respondent, Caroline L. Griffith, is suspended from the practice of law in Kentucky for a period of five (5) years. The period of suspension shall commence on the date of the entry of this Order and shall continue until she is reinstated to the practice of law by Order of this Court pursuant to SCR 3.510.

2. Notwithstanding the five-year period mentioned above, Respondent shall not file an application for reinstatement if there is any outstanding claim or judgment against her resulting from her practice of law prior to resignation, including any claims and judgments against the client's security fund of the Kentucky Bar Association.

3. Respondent, in accordance with SCR 3.450, is directed to pay the costs of these actions in the amount of $902.50, for which execution may issue from this Court upon finality of this Opinion and Order.

4. Pursuant to SCR 3.390, within ten (10) days, Respondent shall notify all clients in writing of her inability to represent them and shall furnish copies of said letters of notice to the Director of the Kentucky Bar Association. She shall also provide such notification to all courts in which she has matters pending.

5. Respondent shall repay Pamela Leonard $220.00 for the retainer fee paid to her, and shall repay any other fees paid to her by any of the complainants identified herein, for which execution may issue from this Court upon finality of this Opinion and Order. No motion for reinstatement shall be considered until such sums have been repaid in full.

6. Respondent is also ordered to immediately cancel any and all advertising in which she may be engaged, to the extent possible.

All concur.

ENTERED: June 17, 2004

/s/ Joseph E. Lambert
    Chief Justice